

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HOPE KASPER and HELEN KERKES | : | CIVIL ACTION |
| | | NO. 3:02 CV00844 (CFD) |
| V. | : | |
| | | |
| CITY OF MIDDLETOWN, DEBRA MOORE, | | |
| And LOCAL 466, COUNCIL 4, of the | | |
| AMERICAN FEDERATION OF STATE, | | |
| COUNTY AND MUNICIPAL EMPLOYEES, | | |
| AFL-CIO | : | OCTOBER 14, 2003 |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE

Pursuant to D. Conn. L. Civ. 7(a), the Defendants, City of Middletown (the "City")

and Debra Moore, submit the foregoing memorandum of law in opposition to the

Plaintiffs' Motion to Strike dated September 21, 2003. The Plaintiff moves to strike

Paragraphs 5, 8, 11, 12, and 15 of the Local Rule 56(a)(1) Statement submitted by the

Defendants as inadmissible hearsay. Contrary to the Plaintiffs' assertions, each of the

paragraphs identified by the Plaintiff set forth material facts, which are supported by

citations to evidence that would be admissible at trial. Specifically, the Defendants have

provided citations to the record based on decisions by the State Board of Labor

Relations and administrative proceedings before the Connecticut Commission on

Human Rights and Opportunities ("CHRO"). For the foregoing reasons, the Court must

deny the Plaintiffs' Motion to Strike.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## I.   FACTUAL BACKGROUND

The Plaintiff moves to strike Paragraphs 5, 8, 11, 13 and 15 of the Local Rule 56(a)(1) Statement, which are supported by citations to the Connecticut State Board of Labor Relations decision dated April 13, 2000; the CHRO Notices of Final Agency Action, dated January 24 and 25, 2001 and the Rejection of the Plaintiffs' Reconsideration Request, dated January 25, 2002. See 56(a)(1) Statement, ¶¶ 5, 8, 11, 12 and 15; Memorandum of Law in Support of Motion to Dismiss, Exhibits A, C, F, G and H.   The Paragraphs the Plaintiffs seek to strike from the Defendants' 56(a)(1) Statement are set forth as follows:

> 5.      The petition was objected to and ultimately denied. (SBLR Decision)

> 8.      Because Plaintiffs solicited an outside union to represent them and others, in violation of the Union's Internal Constitution, there were expelled from the Union.  (Union Findings of Fact and Conclusions of Law, "Union Decision." copy attached to Memorandum of Law as Exhibit C.)

> 11.    In documents dated January 24, and 25, 2001, the CHRO dismissed both Plaintiff's claims, stating, "there is no reasonable possibility that further investigation will result in a finding of reasonable cause." (Kasper CHRO Notice of Final Agency Action, "Kasper Notice of Dismissal," copy attached to Memorandum of Law as Exhibit F; Kerkes CHRO Notice of Final Agency Action, "Kerkes Notice of Dismissal," copy attached to Memorandum of Law as Exhibit G.)

> 12.    Both Plaintiffs filed a request for reconsideration with the CHRO, and both requests were rejected. (Kerkes Reconsideration Request, copy attached to Memorandum of Law as Exhibit H; Kasper Reconsideration Request, copy attached to Memorandum of Law as Exhibit I.)

> 15.    These series of incidents was alleged to occur in January 1999. (Kerkes Notice of Dismissal, Kasper Notice of Dismissal.)

- 2 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Local Rule 56(a)(1) Statement, ¶¶ 5, 8, 11, 12 and 15.

## II.    LAW AND ARGUMENT

### A. The Administrative Findings Regarding the Plaintiffs' Employment Discrimination Claims are Admissible Under Fed. R. Evid. 803(8)(c).

"The Supreme Court has held that prior administrative findings made with respect to an employment discrimination claim are admissible under the exception to the hearsay rule pertaining to public records and investigatory files. *Chandler v. Roudebush*, 425 U.S. 840, 863 n. 39 (1976); Fed. R. Evid 803(8)(C).[1] Specifically, Rule 803(8)(C) applies 'unless the sources of information or other circumstances indicate lack of trustworthiness.' Fed. R. Evid. 803(8)(c)." Strauss v. Microsoft Corporation, 1995 WL 326492 (S.D.N.Y. 1995)(Copy attached hereto as Exhibit A.)   "Once an administrative finding passes muster under Rule 803, the Court next must determine whether the probative value of admitting such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or the needless presentation of cumulative evidence." Id., *3.

In this case, the Defendants have appended prior administrative rulings regarding the Plaintiffs' claims to their Motion to Dismiss or in the Alternative for Summary Judgment. See Exhibits A, C, F, G through H.  Not only are these exhibits

---

[1] "The following are not excluded by the hearsay rule, even though the declarant is unavailable as a witness . . . in civil actions and proceedings against the Government in criminal cases, factual findings resulting from an investigation made pursuant to an authority granted by law." Fed. R. Evid. 803(8)(C).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

admissible under the hearsay exception for public records and reports, but also the agency findings and conclusions are directly relevant to the Plaintiffs' claims in the Complaint. See Fed. R. Evid. 803(8)(C); Complaint ¶¶ 1-29. As such, these administrative records are probative regarding the Plaintiffs' claims and the Plaintiffs have failed to demonstrate any danger of unfair prejudice to preclude their admissibility. See Enilo v. Port Authority of New York and New Jersey, 1996 WL 2432235 (S.D.N.Y. 1996)(admitting prior EEOC determination with limiting instruction for the reason its probative value was not outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury.")(copy attached hereto as Exhibit B).  Since the prior administrative records are admissible under Fed. R.Evid. 803(8)(C), the Plaintiffs' Motion to Strike must be denied.

### B. The Court May Consider Evidence Outside the Pleadings to Determine Subject Matter Jurisdiction.

Although courts are generally limited to examining the sufficiency of the pleadings on a motion to dismiss, "on a challeng[e][to] the district court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings." (Internal quotation marks and citation omitted) Flores v. Southern Peru Copper Corp., 343 F.3d 140, 161 n.30 (2d. Cir. 2003)(citing Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir.1998)).  This is particularly true in determining the timeliness of discrimination claims for EEOC and CHRO filings. See Armstead v. Stop & Shop Companies, Inc., 2002 WL 770732 (D.Conn. 2002)(granting

- 4 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

summary judgment in favor of the defendants for the Plaintiff's failure to timely file his claims within 300 days of the date of the alleged discriminatory action)(copy attached as Exhibit C.)

In this case, the Plaintiffs' Complaint conspicuously fails to set forth the dates for alleged discriminatory conduct occurring prior to March 2000. See Complaint, ¶¶ 1-15. As such, the Defendants have appended the prior CHRO Notice of Final Agency Action regarding the Plaintiffs in this matter, which set forth the specific dates of the alleged discriminatory conduct. See Exhibits F and G. Clearly these records are admissible under Fed. R. Evid. 803(8)(C) and may be considered by the Court to determine relevant dates for subject matter jurisdiction. See Armstead, supra. For these reasons, the Plaintiffs' Motion to Strike must be denied.

## III.   CONCLUSION

For all the above reasons, the Plaintiffs' Motion to Strike Paragraphs 5, 8, 11, 12 and 15 of the Local Rule 56(a)(1) Statement must be denied.

THE DEFENDANTS:
CITY OF MIDDLETOWN AND
DEBRA MOORE


By_____
    James M. Sconzo
    Fed. Bar ct#04571 of
    HALLORAN & SAGE LLP
    One Goodwin Square
    225 Asylum Street
    Hartford, CT 06103
    Juris No. 26105

- 5 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## CERTIFICATION

This is to certify that on this 14th day of October, 2003, a copy of the foregoing was either mailed, postage prepaid, or hand-delivered to:

John R. Williams, Esq.
Williams & Pattis
51 Elm Street
New Haven, CT 06510

Lewis K. Wise, Esq.
Rogin, Nassau, Caplan, Lassman & Hirtle, LLC
CityPlace I, 22nd Floor
185 Asylum Street
Hartford, CT 06103-3460

Trina A. Solecki, Esq.
City Attorney's Office
City of Middletown
245 deKoven Drive
P.O. Box 1300
Middletown, CT 06457 1300

Kevin R. Brady

474240.1(HSFP)

- 6 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

EXHIBIT A

1995 WL 326492
68 Fair Empl.Prac.Cas. (BNA) 1576
(Cite as: 1995 WL 326492 (S.D.N.Y.))

Page 1

**Ħ**

United States District Court, S.D. New York.

Karen STRAUSS, Plaintiff,
v.
MICROSOFT CORPORATION, Defendant.

**91 Civ. 5928 (SWK).**

June 1, 1995.

*MEMORANDUM OPINION AND ORDER*

KRAM, District Judge.

*1 In this sex discrimination case, plaintiff Karen Strauss ("Strauss") moves *in limine* for an order precluding certain evidence in support of defendant Microsoft Corporation's ("Microsoft") counterclaim. Microsoft cross-moves *in limine* for an order directing that (1) the Equal Employment Opportunity Commission's ("EEOC") prior determination is admissible at trial; (2) certain statements and electronic mail ("e-mail") messages proffered by plaintiff are inadmissible at trial; and (3) the determination of the appropriate cut-off date for back-pay damages should be resolved by the Court as a matter of law, rather than by the jury. The Court shall consider each issue below.

I. Conversion Counterclaim [FN1]

Microsoft, a company engaged in the development and sale of computer software, publishes a journal entitled *Microsoft Systems Journal* (the "Journal"). From March 14, 1988, until her employment was terminated effective January 19, 1990, Strauss was employed as an assistant editor of the Journal.

Subsequent to her termination, by letter dated January 23, 1990, counsel for Microsoft described to Strauss the procedures by which she could remove her personal belongings from her office and return those items that belonged to Microsoft. Specifically, the January 23, 1990 letter indicated that Strauss was to return all computer hardware, books and software that she received as an employee of Microsoft, as opposed to books and software received as personal gifts. She was not required, however, to return periodicals. [FN2]

On January 25, 1990, Strauss removed her possessions from Microsoft's offices. Denise Putnam ("Putnam"), a Microsoft employee, remained with Strauss and made a written record of what she packed into boxes for removal. Eric Maffei ("Maffei"), an editor of the Journal, also remained in the office for part of the time that Strauss packed her belongings. Strauss contends that neither Putnam nor Maffei complained that she was removing Microsoft property from the office.

By letter dated February 8, 1990, however, counsel for Microsoft wrote to Strauss's attorneys setting forth a list of 126 items that Strauss allegedly had taken from her office. The February 8, 1990 letter indicated that Strauss had removed some of the 126 items "with total disregard for our agreement that only personal items (as opposed to books and software received in your client's job capacity) would be removed." *See* letter from Peter L. Miller to Julian R. Birnbaum of 2/8/90, annexed to Def.'s Resp. to Pl.'s Mot. *In Limine* to Preclude Evidence In Supp. of Microsoft's Counterclaim as Exh. "A."

Subsequently, in September 1991, Strauss commenced the present action for sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New York State Human Rights Law, N.Y.Exec.Law § 296 *et seq.* On October 24, 1991, Microsoft filed an answer and counterclaim asserting that Strauss had converted Microsoft's property.

*2 Strauss now moves for an order precluding Microsoft from offering any evidence in support of its counterclaim at trial. Specifically, Strauss argues that, as Microsoft has failed to disclose sufficient evidence in the Amended Joint Pretrial Order (the "JPO") to establish any of the necessary elements of conversion, it should be precluded from offering evidence in support of its claim at trial. The Court disagrees.

Conversion is defined as " 'any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property.' " *Jim Henson Prods., Inc. v. John T. Brady & Assocs.,* 867 F.Supp. 175, 191 (S.D.N.Y.1994) (quoting *Meese v. Miller,* 79 A.D.2d 237, 436 N.Y.S.2d 496,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1995 WL 326492
68 Fair Empl.Prac.Cas. (BNA) 1576
**(Cite as: 1995 WL 326492 (S.D.N.Y.))**

Page 2

500 (1981)). While Microsoft ultimately may not be able to prove all of the elements of its conversion counterclaim at trial, the Court concludes that it has set forth sufficient evidence in the JPO to warrant permitting its claim to go forward. Specifically, Microsoft listed its conversion counterclaim as a claim for relief in the JPO. *See* JPO at ¶ IV(b). In addition, the parties stipulated that, on January 25, 1990, Strauss came to the Journal's office to remove her personal property. On February 8, 1990, Microsoft wrote to Strauss's counsel demanding the return of listed items that Strauss had removed from the offices. *Id.* at ¶¶ V(24) and (25). [FN3] Microsoft also indicated in the JPO that the evidence will show that the property identified in the February 8, 1990 letter belongs to it. *Id.* at ¶ 22(a).

Strauss complains that Microsoft has not designated which items listed in the February 8, 1990 letter belong to Microsoft rather than to Strauss. Based on the information contained in the JPO, however, the Court concludes that ownership of each of the listed items is a disputed issue of fact for the jury to determine at trial. Accordingly, plaintiff's motion *in limine* seeking to preclude evidence in support of Microsoft's counterclaim is denied.

II. EEOC Determination

Prior to commencing this action, plaintiff brought her charges before the EEOC for investigation. On January 12, 1991, the EEOC issued a written determination, concluding that the evidence failed to substantiate Strauss's claim that Microsoft violated Title VII. *See* EEOC Determination, annexed to the Def.'s Mem. in Supp. of its Mot. *In Limine* Regarding the Admissibility of Certain Evidence and the Determination of any Damages as Exh. "A." Specifically, with respect to Strauss's claim that Microsoft discriminated against her by failing to promote her to the position of technical editor of the Journal, the EEOC concluded that the successful candidate for the position of technical editor was more qualified than Strauss. *Id.* With regard to the issue of retaliatory discharge, the EEOC determined that Microsoft made several attempts to resolve the dispute with Strauss informally, but that matters "eventually escalated to the point where she could no longer work for [Microsoft]." *Id.*

*3 Microsoft now moves for an order deeming the EEOC determination admissible at trial. Strauss opposes this motion, contending that the evidence is inadmissible under Federal Rule of Evidence 403. The Court concludes that the EEOC determination is admissible evidence.

The Supreme Court has held that prior administrative findings made with respect to an employment discrimination claim are admissible under the exception to the hearsay rule pertaining to public records and investigatory files. *Chandler v. Roudebush,* 425 U.S. 840, 863 n. 39 (1976); Fed.R.Evid. 803(8)(C). Specifically, Rule 803(8)(C) applies "unless the sources of information or other circumstances indicate lack of trustworthiness." Fed.R.Evid. 803(8)(C). As Strauss offers no evidence that the EEOC determination is untrustworthy, the Court finds that the EEOC finding is admissible under Rule 803(8)(C).

Once an administrative finding passes muster under Rule 803, the Court next must determine whether the probative value of admitting such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or the needless presentation of cumulative evidence. *See* Fed.R.Evid. 403.

Engaging in the appropriate balancing test under Rule 403, the Court concludes that the probative value of the EEOC determination in the instant case is not outweighed by the danger of unfair prejudice or any other relevant consideration. The Court recognizes that an EEOC finding is not binding either on the Court or the jury, "and is to be given no more weight than any other testimony given at trial." *Smith v. Universal Servs., Inc.,* 454 F.2d 154, 157 (5th Cir.1972). Nonetheless,
[t]he fact that an investigator, trained and experienced in the area of discriminatory practices and the various methods by which they can be secreted, has found that it is likely that such an unlawful practice has occurred [or has not occurred], is highly probative of the ultimate issue involved in such cases.

*Id.; see also Barfield v. Orange County,* 911 F.2d 644, 649 (11th Cir.1990) (upholding trial judge's determination that the danger of unfair prejudice

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1995 WL 326492
68 Fair Empl.Prac.Cas. (BNA) 1576
**(Cite as: 1995 WL 326492 (S.D.N.Y.))**

Page 3

was too small to overcome the highly probative nature of an EEOC determination), *cert. denied,* 500 U.S. 954 (1991); *Plummer v. Western Int'l Hotels Co.,* 656 F.2d 502, 505 (9th Cir.1981) ("An EEOC determination, prepared by professional investigators on behalf of an impartial agency, has been held to be a highly probative evaluation of an individual's discrimination complaint.") (permitting introduction of EEOC determination in jury trial); *Abrams v. Lightolier, Inc.,* 702 F.Supp. 509, 512 (D.N.J.1988) (concluding that the probative nature of an EEOC determination generally outweighs its prejudicial effect. To hold otherwise would render the EEOC investigation process meaningless. Accordingly, the Court finds that the EEOC determination is admissible at trial.

*4 To guard against potential prejudice, however, the Court shall provide the jury with a limiting instruction at the appropriate time. *See Gilchrist v. Jim Slemons Imports, Inc.,* 803 F.2d 1488, 1500-01 (9th Cir.1986) (finding no reversible error in admission of EEOC age discrimination letter of violation where judge instructed jury of its obligation to evaluate the evidence independently); *Abrams v. Lightolier, Inc.,* 702 F.Supp. at 512 (utilizing jury instruction to ensure that the jury did not deem the EEOC determination dispositive). In addition, Strauss remains free to present evidence refuting the findings of the EEOC and pointing out any deficiencies contained in its determination. *See McClure v. Mexia Indep. Sch. Dist.,* 750 F.2d 396, 400 (5th Cir.1985) (citing *Plummer v. Western Int'l Hotels Co.,* 656 F.2d at 505 n. 9). Under these conditions, the Court concludes that admission of the EEOC determination at trial does not violate Rule 403.

III. Remarks and E-Mail Messages

Microsoft next moves to preclude plaintiff from offering certain remarks and e-mail messages at trial. Specifically, Microsoft seeks to preclude evidence that (1) Jon Lazarus ("Lazarus"), the Journal's editor, referred to another woman in the office as the "Spandex Queen;" (2) Lazarus told a temporary receptionist that he would give her $500 if she would permit him to call her "Sweet Georgia Brown;" (3) Lazarus referred to himself as the "president of the Amateur Gynecology Club;" (4) plaintiff received an e-mail message containing a satirical essay entitled "Alice in UNIX Land;" (5)

Lazarus forwarded to the Journal staff an e-mail advertisement containing a product announcement for replacement "Mouse Balls;" (6) Lazarus forwarded to a male Journal staff member an e-mail message containing a Reuter's news report on Finland's proposal to institute a sex holiday; (7) Lazarus forwarded a parody of a play entitled "A Girl's Guide to Condoms" to a male staff member via e- mail, who later forwarded it to plaintiff. According to Microsoft, this evidence is inadmissible under Federal Rules of Evidence 401, 402 and 403 because it is irrelevant, unfairly prejudicial to Microsoft and would confuse and mislead the jury. The Court finds this argument meritless.

Rule 401 of the Federal Rules of Evidence provides that evidence is relevant if it makes "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. As the Court concluded in its prior opinions denying summary judgment, evidence of Lazarus's inappropriate office comments and e-mail messages, when viewed in light of Strauss's other evidence of pretext, could lead a reasonable jury to conclude that Microsoft's proffered reason for failing to promote Strauss is not the true reason for its actions. *See Strauss v. Microsoft Corp.,* 856 F.Supp. 821, 825 (S.D.N.Y.1994); *Strauss v. Microsoft Corp.,* 814 F.Supp. 1186, 1194 (S.D.N.Y.1993). Accordingly, while Lazarus's remarks and e-mail messages do not inevitably prove that gender played a part in his employment decisions, such evidence certainly is relevant under Rule 401. *See Mullen v. Princess Anne Volunteer Fire Co.,* 853 F.2d 1130, 1133 (4th Cir.1988) ("Use of racial aspersions obviously provides an indication that the speaker might be more likely to take race into account in making a hiring or membership decision. The probative value of this evidence is apparent from the nature of the words involved."); *Conway v. Electro Switch Corp.,* 825 F.2d 593, 597 (1st Cir.1987) (upholding admission of circumstantial evidence of discriminatory atmosphere at plaintiff's place of employment); *Marfia v. T.C. Ziraat Bankasi,* 874 F.Supp. 560, 564 (S.D.N.Y.1994) ("Statements manifesting discriminatory attitudes on the part of employers surely are relevant to a claim of discrimination."); *Stewart v. Peat, Marwick, Mitchell & Co.,* 52 Fair Empl.Prac.Cas. (BNA) 445,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1995 WL 326492
68 Fair Empl.Prac.Cas. (BNA) 1576
**(Cite as: 1995 WL 326492 (S.D.N.Y.))**

86 Civ. 0613, 1989 U.S. Dist. LEXIS 3304, at *22 (S.D.N.Y. Apr. 4, 1989) ("A statement by an employer showing his animus toward members of a particular race is a common way of proving that race made a difference in the employer's employment decision.").

**\*5** Microsoft argues that, even if this evidence is relevant, it should be excluded pursuant to Rule 403 because its probative value is outweighed by the danger of unfair prejudice. Specifically, Microsoft characterizes Lazarus's remarks and e-mail messages as attempts at humor and argues that the evidence is inadmissible because it is not directly connected to Microsoft's promotion and termination decisions. [FN4] The Court finds, however, that the evidence is probative despite the fact that the statements did not relate directly to either of the specific decisions at issue. *Mullen v. Princess Anne Volunteer Fire Co.,* 853 F.2d at 1134. Furthermore, while testimony concerning the remarks and e-mail messages may be embarrassing or offensive, such prejudice is directly associated with the probative value of the evidence. As the evidence thus does not "unfairly" prejudice Microsoft, it is admissible under Rule 403. *See George v. Celotex Corp.,* 914 F.2d 26, 31 (2d Cir.1990) (finding no "unfair" prejudice where prejudice derived from evidence's probative value); *Mullen v. Princess Anne Volunteer Fire Co.,* 853 F.2d at 1135 ("[T]he Federal Rules favor placing even the nastier side of human nature before the jury if to do so would aid its search for truth."); *Wilson v. City of Aliceville,* 779 F.2d 631, 635 (11th Cir.1986) (stating that "what is prejudicial to the defendant is beneficial to the plaintiff"). Accordingly, Microsoft's motion to preclude evidence of Lazarus's office behavior is denied.

IV. Damages

Microsoft next contends that the Court should determine as a matter of law the appropriate cut-off date for purposes of calculating back pay. Specifically, Microsoft seeks an order denying an award of back pay for any period after February 1991. As material factual issues exist concerning Strauss's employment history after her termination from Microsoft, however, defendant's motion is denied.

The parties do not dispute that Strauss was

discharged from Microsoft effective January 19, 1990. Microsoft contends that, in May 1990, plaintiff commenced employment at Technology Solutions as an account executive providing public relations services to a software company. Subsequently, in October 1990, Strauss was fired from that position, allegedly because her account was "impossible to work for." *See* Deposition of Karen Strauss, undated, annexed to the Mem. in Opp'n to Def.'s Mot. In Limine as Exh. "B," at 290. In February 1991, Strauss began working at the H.W. Wilson Company, but was soon fired because of her absence due to an ankle injury. In October 1991, Strauss commenced employment at New York University.

Microsoft argues that Strauss should not be awarded back pay for any period after she was discharged from Technology Solutions. It is well-settled that "[a] Title VII plaintiff is entitled to backpay from the date of discharge until the date the plaintiff secures employment that is comparable to that from which she was unlawfully terminated, less interim earnings or amounts earnable with reasonable diligence." *Sims v. Mme. Paulette Dry Cleaners,* 638 F.Supp. 224, 230 (S.D.N.Y.1986). Where a plaintiff has obtained equivalent employment elsewhere and quits without sufficient reason, " 'the backpay award must be offset by the amount the plaintiff would have earned had he kept the job.' " *Id.* at 229 (quoting *Griffen v. George B. Buck Consulting Actuaries, Inc.,* 566 F.Supp. 881, 882 (S.D.N.Y.1983)). This rule also applies where the plaintiff engages in willful misconduct in order to be fired. *See id.; see also Ford Motor Co. v. EEOC,* 458 U.S. 219, 231 n. 15 (1982) (stating that deductions should be made " 'not only for actual earnings by the worker but also for losses which he willfully incurred' ") (quoting *Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 197-98 (1941)); *Brady v. Thurston Motor Lines, Inc.,* 753 F.2d 1269, 1277 (4th Cir.1985) (stating that a Title VII claimant must use reasonable diligence to maintain any suitable employment that is secured). Termination from subsequent employment does not toll the back pay period, however, when the claimant's conduct inducing discharge is motivated by unreasonable working conditions. *See EEOC v. Delight Wholesale Co.,* 973 F.2d 664, 670 (8th Cir.1992).

**\*6** In order to establish whether the amount of Strauss's back pay award should be offset by the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1995 WL 326492
68 Fair Empl.Prac.Cas. (BNA) 1576
**(Cite as: 1995 WL 326492 (S.D.N.Y.))**

amount she would have earned had she kept her job at Technology Solutions, it is necessary to determine whether Strauss used reasonable diligence in attempting to maintain her employment there. As the reason for Strauss's discharge is disputed, the Court cannot determine the parameters of the back pay period as a matter of law.

Alternatively, Microsoft argues that Strauss's disability in February 1991 bars recovery of any back pay thereafter. In support of this proposition, Microsoft relies on *Saulpaugh v. Monroe Community Hosp*, 4 F.3d 134, 145 (2d Cir.1993), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189 (1994). In *Saulpaugh*, the district court excluded lost wages incurred after January 1, 1988 from its damages calculations because of plaintiff's permanent disability after that date. *Id.* at 140. The Second Circuit affirmed, holding that, as plaintiff would not have been entitled to her salary while disabled, her losses after 1988 were not the result of the discrimination that she suffered. *Id.* at 145.

In the present case, however, Strauss's disability appears to have been temporary, as she obtained employment at New York University in October 1991. Moreover, it is disputed whether Strauss would have been entitled to her salary at Microsoft during the period of her disability. In light of these material issues of fact, a determination of the back pay period cannot be made at the present time.

CONCLUSION

For the reasons set forth above, plaintiff's motion for an order precluding evidence in support of defendant's counterclaim is denied. Defendant's motion for an order (1) permitting the admission of the EEOC determination at trial is granted; (2) deeming certain statements and e-mail messages proffered by plaintiff inadmissible is denied; and (3) determining the appropriate cut-off date for the calculation of back pay damages is denied. The parties are directed to submit supplemental proposed jury instructions and a proposed special verdict form addressing the damages issue on or before June 12, 1995. Trial shall commence on Monday, June 19, 1995, at 10:00 a.m.

SO ORDERED.

FN1. The factual background of this action is set forth fully in *Strauss v. Microsoft Corp*, 814 F.Supp. 1186 (S.D.N.Y.1993). Accordingly, only those facts bearing on the current motions shall be summarized herein.

FN2. Plaintiff has failed to provide the Court with a copy of the January 23, 1990 letter. The Court reminds the parties of their obligation to provide the Court with all relevant documents referred to in their motion papers.

FN3. The February 8, 1990 letter is listed as Plaintiff's Exhibit 150 in the JPO.

FN4. In support of this contention, Microsoft relies upon *Haskell v. Kaman Corp*, 743 F.2d 113, 120 (2d Cir.1984) and *Chappell v. GTE Prods. Corp*, 803 F.2d 261, 268 (6th Cir.1986), two cases which were expressly distinguished from the instant action in the Court's prior opinion. *See Strauss v. Microsoft Corp*, 814 F.Supp. at 1194 n. 9.

1995 WL 326492, 1995 WL 326492 (S.D.N.Y.), 68 Fair Empl.Prac.Cas. (BNA) 1576

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

EXHIBIT B

Not Reported in F.Supp.
(Cite as: 1996 WL 243235 (S.D.N.Y.))

Page 1

**c**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Jeffrey ENILO, Plaintiff,

v.

The PORT AUTHORITY OF NEW YORK and
NEW JERSEY, and Kelly Avenoso, Defendants.

**No. 93 CIV. 4832 (DLC).**

May 10, 1996.

Denise Bonnaig, Bonnaig & Thomas, New York
City, for Plaintiff.

Christian H. Gannon, Law Department of the Port
Authority of New York & New Jersey, New York
City, for Defendants.

*OPINION & ORDER*

COTE, District Judge:

*1 On July 16, 1993, Jeffrey Enilo ("Enilo") filed
this action alleging that the defendants The Port
Authority of New York and New Jersey ("Port
Authority") and Kelly Avenoso ("Avenoso")
discriminated against him on the basis of race and
national origin when they terminated his
employment with the Port Authority. Avenoso, one
of Enilo's supervisors, had recommended the
termination. At trial, Enilo proceeded under an
amended complaint that alleged that the Port
Authority violated his rights under Title VII of the
Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et.
seq.,* ("Title VII") and that Avenoso violated his
rights under 42 U.S.C. § 1981.

On April 9, 1996, after a five day trial, a jury
returned a verdict in favor of the defendants. Enilo
has moved for a judgment as a matter of law [FN1],
or in the alternative, for a new trial. The motion is
denied.

Motion for a Directed Verdict

Under Rule 50, Fed. R. Civ. P., a motion for
judgment as a matter of law is limited to issues

raised in any prior motion for a directed verdict. *See
Cruz v. Local Union No. 3 of Int'l Brotherhood of
Elec. Wkrs.,* 34 F.3d 1148, 1155 (2d Cir. 1994);
*Gibeau v. Nellis,* 18 F.3d 107, 109 (2d Cir. 1994).
"'The rule is well established that a motion for
directed verdict at the close of all the evidence is a
prerequisite for [judgment as a matter of law].'"
*Cruz,* 34 F.3d at 1155 (quoting *Hilord Chemical
Corp. v. Ricoh Electronics, Inc.,* 875 F.2d 32, 37
(2d Cir. 1989) (brackets in original)). Enilo did not
make any motion for a directed verdict, and
therefore, this motion must be denied unless there is
manifest injustice. *Nellis,* 18 F.3d at 107. As the
discussion which follows of the motion for a new
trial demonstrates, a verdict for the defendants does
not constitute a manifest injustice.

Motion for a New Trial

In the alternative, the plaintiff requests a new trial,
pursuant to Rule 59, Fed. R. Civ. P. The Court may
grant a new trial if it is convinced that the jury's
verdict was "against the weight of the evidence" or
that the jury has reached a "'seriously erroneous
result.'" *U.S. East Telecommunications, Inc. v. U.S.
West Communications Services, Inc.,* 38 F.3d 1289,
1301 (2d Cir. 1994) (quoting *Mallis v. Barkers
Trust Co.,* 717 F.2d 683, 691 (2d Cir. 1983)); *see
also Piesco v. Koch,* 12 F.3d 332, 344 (2d Cir.
1993) ("seriously erroneous" standard reaffirmed as
the standard of Second Circuit). Under this
standard, the Court "'is free to weigh the evidence
[itself] and need not view it in the light most
favorable to the verdict winner.'" *Song v. Ives
Laboratories, Inc.,* 957 F.2d 1041, 1047 (2d Cir.
1992) (quoting *Bevevino v. Saydjari,* 574 F.2d 676,
684 (2d Cir. 1978) (citing 11 C. Wright & A. Miller
*Federal Practice and Procedure* § 2806, at 44-45
(1973))). Even if there is substantial evidence to
support the jury verdict, a new trial may be
warranted. *Song,* 957 F.2d at 1047 (citing *Bevevino,*
574 F.2d at 683 (citing C. Wright & A. Miller,
supra, § 2806, at 43)). Nevertheless, the Court must
bear in mind that

*2 "[w]here the resolution of the issues depended
on assessment of the credibility of the witnesses,
it is proper for the court to refrain from setting
aside the verdict and granting a new trial."

*Piesco,* 12 F.3d at 345 (quoting *Metromedia Co. v.
Fugazy,* 983 F.2d 350, 363 (2d Cir. 1992), *cert.
denied,* 113 S. Ct. 2445 (1993)).

Enilo's motion is based on two grounds. First, Enilo

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
**(Cite as: 1996 WL 243235 (S.D.N.Y.))**

contends that the jury should have returned a verdict for him based on the evidence received at trial. Enilo believes that some of the inferences the jury drew in this case may have been based on speculation. At the same time, however, he recognizes that the evidence presented did not "mandate" a finding of discrimination. Second, Enilo argues that the Court erred in admitting as evidence the EEOC determination that evidence obtained in the EEOC investigation of Enilo's claim did not support Enilo's claim that he had been discriminated against.

Trial Evidence

The evidence at trial showed the following. Enilo, a Black Nigerian, was hired by the Port Authority on February 24, 1992, as an Assistant Environmental Analyst in the Asbestos Management Division. The Port Authority fired Enilo, who was still a probationary employee, on July 17, 1992. The jury heard extensive evidence regarding three episodes of plaintiff's behavior while employed at the Port Authority that the Port Authority considered in making its decision to terminate his employment.

First, Enilo admitted to the Port Authority that he had misappropriated commutation passes. As a New Jersey resident assigned to work at JFK, Enilo was entitled to commutation passes allowing him to travel for free through Port Authority facilities while engaged on Port Authority business. Port Authority regulations forbid use of such passes for personal travel. When Enilo applied for a second batch of such passes, which are distributed 100 at a time, the Port Authority analyzed Enilo's work schedule and concluded that Enilo should still have 29 of the passes already distributed to him. At a session at which he was questioned about his use of the passes, Enilo admitted that he had used three passes for personal reasons. At trial, Enilo denied making such an admission and explained that the passes had been used for additional travel through Port Authority facilities to transport asbestos samples to a laboratory and to ferry documents among offices. Port Authority employees testified, however, that messengers perform such delivery services and that there was no laboratory at the facility Enilo identified during the period at issue.

Second, Enilo did not complete the application process for obtaining a certification which would have allowed him to work at the Port Authority's New Jersey facilities, despite repeated efforts by the Port Authority to assist him with the application process. Without this certification, the Port Authority was restricted in where it could use Enilo, and thus had less flexibility in scheduling his regular assignments and in responding to emergencies.

**\*3** The Port Authority witnesses also testified to another incident that affected their view of Enilo's attitude toward his employment with the Port Authority. Enilo went to the beginning of a breakfast orientation meeting for new employees, but left early. When his supervisors confronted him with his absence from a meeting which he was required to attend, he explained he had left because he decided that remaining at the meeting was not a good use of his time. At trial, Enilo denied making such a statement, and claimed that he had left the meeting early because he had gotten violently ill.

Besides contesting the defendants' version of the three incidents described above, Enilo argues that the evidence could have supported a verdict in his favor for the following reasons. First, he points to the fact that his supervisors had no complaints about the way he performed his assignments. Next, he contends that he was fired not because he failed to meet any established standard of behavior for a Port Authority employee but rather because the Port Authority's racial bias led it to conclude wrongly that he did not fit into the Port Authority culture. To demonstrate that bias he testified to a number of incidents, pointing particularly to statements he alleged were made by Avenoso. Several of the incidents that Enilo recounted were, according to him, witnessed by others. No one corroborated Enilo's recitation of these events, however. Indeed, employees who Enilo claimed had witnessed the events, repeatedly denied that the incidents had occurred.

For example, Enilo claimed that Avenoso approached him at a "team building" meeting attended by members of the Division and said to him in front of many others: "What are you doing here? You know you don't belong here. Do you see an African here?" No one could corroborate that statement, although many should have overheard it and given its unusual nature, remembered it if it had been made. Enilo also claimed that Avenoso and another Port Authority supervisor who visited him during their lunch break while he was ill in the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
(Cite as: 1996 WL 243235 (S.D.N.Y.))

hospital took that opportunity to search his room for some papers (the significance of which was never explained) and say to him "It's the end of the fairy tale." Avenoso and the supervisor, in contrast, testified that they had simply made the visit as an act of kindness. They denied searching the room or making any remark like the one reported by Enilo.

The jury heard from Enilo, from Avenoso, and from the other employees who witnessed the events at issue. They were able to assess the credibility of each of the witnesses and the verdict represents their judgment regarding that testimony. For the Court's part, I am persuaded that the jury weighed the evidence appropriately and was correct in finding that the defendants did not discriminate against Enilo based either on his race or national origin. [FN2] Enilo's argument that a verdict in his favor would also have been consistent with the evidence is not a sufficient ground for granting a new trial.

EEOC Determination

**\*4** Prior to trial, the Court ruled on the admissibility of the EEOC Determination that summarized the EEOC's investigation and findings with respect to Enilo's claims. Plaintiff's counsel had moved in limine to prevent admission of the Determination. Plaintiff nonetheless intended to offer as part of his case in chief the fact that he had lodged a complaint with the EEOC and that the defendants had made what were in his view inconsistent statements to the EEOC of their reasons for terminating him. The EEOC Determination concluded that Mr. Enilo was "discharged because of his failure to follow company policy and procedures during his probationary period," and that "the evidence ... does not establish a violation [of Title VII]."

The Court ruled that the defendants would be permitted to introduce the EEOC Determination pursuant to Rule 803(8)(C), Fed. R. Evid. I held that, under Rule 403, Fed. R. Evid., the probative value of admitting the document was not outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury. *See, e.g., Barfield v. Orange County,* 911 F.2d 644, 649 (11th Cir.), *cert. denied,* 500 U.S. 954 (1991); *McClure v. Mexia Independent School Dist.,* 750 F.2d 396, 399 (5th Cir. 1985); *Plummer v. Western Int'l Hotels Co.,* 656 F.2d 502, 505 (9th Cir. 1981);

*Strauss v. Microsoft Corp.,* 1995 WL 326492 (S.D.N.Y. June 1, 1995). The document was admitted with a limiting instruction, however, drawing on language proposed by counsel for both sides, advising the jury that

> an individual may bring a lawsuit even when the EEOC finds no reasonable cause to believe the allegation of discrimination. The EEOC finding is not binding on you, and you should give it no more weight than you would give any other evidence at trial. You are to evaluate and weigh the EEOC determination in the same manner you would evaluate and weigh any other evidence in reaching your decision in this case. If you find that the plaintiff has established during this trial that some or all of the factual findings on which the EEOC apparently relied in making its determination are incorrect, then you may disregard the EEOC determination.

This instruction, to which the plaintiff did not object, was sufficient to ensure that the jury would make proper use of the EEOC Determination in evaluating the evidence. Admission of the EEOC Determination, standing alone or coupled with the other basis for a new trial proffered by plaintiff, does not support plaintiff's contention that a new trial is warranted.

*Conclusion*

For the reasons given above, plaintiff's motion for judgment as a matter of law is denied. Plaintiff's motion for a new trial is also denied. The Clerk of Court shall enter judgment for the defendants.

SO ORDERED:

> FN1. The plaintiff uses the terms "judgment notwithstanding the verdict" and "JNOV". After the 1991 Amendments to the Federal Rules of Civil Procedure, however, the appropriate term is "judgment as a matter of law" and is therefore used in this opinion. *See Arkin v. Gittleson,* 32 F.3d 658, 659 n.2 (2d Cir. 1994).

> FN2. Enilo finds support for his motion in the September 21, 1994 Order entered by this Court granting him pro bono counsel, which stated in part: "From the limited

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
**(Cite as: 1996 WL 243235 (S.D.N.Y.))**

Page 4

record before me I find that plaintiff's claim that the three reasons submitted by the Port Authority to justify his termination were pretextual, is likely to be of substance. Whether he will prevail in establishing that the reasons for termination were reasons which run afoul of Title VII is more difficult to judge at this stage. It is clear, however, that his ability to do so will be very much assisted by the presence of counsel." This statement was made before the Court heard the evidence presented at trial. The Court is in full agreement with the decision reached by the jury. At trial, although represented by competent and dedicated counsel, plaintiff was not able to carry his burden of proof.

1996 WL 243235 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

EXHIBIT C

Not Reported in F.Supp.2d
**(Cite as: 2002 WL 770732 (D.Conn.))**

**H**
Only the Westlaw citation is currently available.


United States District Court, D. Connecticut.

Anthony ARMSTEAD
v.
THE STOP & SHOP COMPANIES, INC., a/k/a
The Stop & Shop Supermarket Company

**No. 3:01CV1489(JBA).**

April 19, 2002.


RULING ON DEFENDANT'S MOTION FOR
JUDGMENT [# 15]

ARTERTON, D.J.

*1 Plaintiff Anthony Armstead filed this diversity action against his former employer, The Stop & Shop Companies, Inc. ("Stop & Shop"), alleging violations of the Americans with Disabilities Act ("ADA"), the Connecticut Fair Employment Practices Act, and state law claims, arising out of defendant's alleged refusal to permit plaintiff to return to work with limitations following his injury in a car accident. Defendant has now moved for judgment on the pleadings on the grounds that plaintiff's claims are untimely. For the reasons set forth below, the Court agrees and defendant's motion is GRANTED. [FN1]

> FN1. In an endorsement order dated today, the Court grants plaintiff's motion to strike from defendant's motion all arguments other than those relating to the untimeliness of plaintiff's state and federal disability discrimination claims, as originally contemplated during the pre-filing conference held November 7, 2001.


I. Factual background

Plaintiff began working for Stop & Shop as a deli clerk in April or May of 1999. After a car accident in 2000, plaintiff took a medical leave of absence

from May through July 2000. In July 2000, plaintiff submitted a doctor's note clearing him to return to work with bending and lifting restrictions. Defendant refused to accommodate plaintiff's restrictions and would not permit him to return to work unless he was completely recovered. While precisely *when* plaintiff was terminated has been put at issue by plaintiff's amendment of his complaint, which originally alleged that he was terminated on July 23, 2000 and now alleges that the same events occurred on August 23, 2000, the parties agree that plaintiff was eventually terminated, although defendant never issued a written notice of termination and never gave plaintiff a pink slip.

It is undisputed that plaintiff met with the store manager, Mark Gursen, on July 24, 2000, to discuss plaintiff's interest in returning to work. At that meeting, Gursen apparently refused to accept plaintiff's Work Capabilities Report indicating that he was cleared for work with some restrictions, advised plaintiff that since his injury had not occurred at work, Stop & Shop was under no obligation to take plaintiff back, and suggested to plaintiff that he take a medical leave. *See* Pl. Opp. to S.J., Ex. 3. It is further undisputed that following that meeting, plaintiff's attorney wrote to defendant on July 28, 2000, stating: "If it is your intention to terminate Mr. Armstead as you indicated in your meeting with him then please contact him so that he can pick up his pink slip." *Id.* On July 27, 2000, a "Request for Leave of Absence" form was completed and signed by Mark Gursen, based on plaintiff's inability to return to work full duty without restrictions as a result of a car accident. Pl.Ex. 5.

While the deposition testimony of Mark Gursen suggests no specific recollection of when plaintiff was actually terminated, *see* Gursen dep. at 29, 42, Gursen also testified that he did recall explaining to Armstead that the process by which he would be terminated had begun, *see id.* at 12.

In connection with plaintiff's application for unemployment benefits filed with the Connecticut Department of Labor on August 23, 2000, plaintiff described under oath the following circumstances of his termination:

*2 I was terminated from my job on approx 7/23/00. I had been out of work because of medical reasons since approx 3/15/00 due to

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2002 WL 770732 (D.Conn.))

injuries to my neck from 2 separate car accidents. I was released for work with restrictions .... I brought this to Mark Gursen, General Store Manager. He told me that he wasn't obligated to take me back since it was not a workman's compensation case. He told me he would be able to rehire me back when I was back at 100%.... My job was held for me up until the end of 7/00. After that they would not schedule me for work because of my restrictions.

Def. Mem. in Supp. of S.J., Ex. 4. Plaintiff's benefits application was subsequently approved. Later, in a claim for wages filed with the Connecticut Department of Labor and dated October 7, 2000, plaintiff identified the date of separation as "July or August, 2000." Pl.Ex. 4.

Finally, Armstead filed a sworn complaint with the EEOC, signed June 13, 2001, and received by the EEOC on June 15, 2001, in which he stated that:

Respondent refused to provide me with the reasonable accommodations of lifting and bending restrictions. On or about July 23, 2000, I was terminated from my position. The stated reason for my termination was 'I am firing you.' Respondent did not provide me with a pink slip, despite my repeated requests for one. Finally, on August 23, 2000, I filed for unemployment.

Pl. Ex 7. Because the complaint of discriminatory termination and refusal to accommodate was filed over 300 days after July 23, 2000, the EEOC refused to investigate this claim as untimely and on June 28, 2001, issued plaintiff a right to sue letter. Pl.Ex. 8. The present lawsuit was timely filed within 90 days of the issuance of the right to sue letter.

## II. Discussion

### A. Standard of Review

As a preliminary matter, the Court notes that while defendant has styled its motion as a Rule 12(c) motion for judgment on the pleadings, the Court permitted limited discovery on the statute of limitations issue, and both sides have submitted supporting evidence outside the complaint. Thus, as plaintiff recognizes in opposition, the motion is more properly described as a motion for summary judgment under Fed.R.Civ.P. 56. As plaintiff has had the opportunity to submit evidence supporting his claim of timely filing with the EEOC, the Court treats the motion as one for summary judgment.

Summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 107 (2d Cir.1998). A genuine issue of fact is one that, if resolved in favor of the non-moving party, would permit a jury to return a verdict for that party. *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir.1997) (*citing Anderson*, 477 U.S. at 248).

\*3 After the moving party meets this burden, the burden shifts to the non- moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *accord Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir.1994). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Instead, that party must "come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely ... on the basis of conjecture or surmise." *Trans Sport v. Starter Sportswear*, 964 F.2d 186, 188 (2d Cir.1992) (citation and internal quotations omitted); *see also Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986). "The possibility that a material issue of fact may exist does not suffice to defeat the motion; upon being confronted with a motion for summary judgment the party opposing it must set forth arguments or facts to indicate that a genuine issue--not merely one that is colorable--of material fact is present." *Gibson v. American Broadcasting Cos.*, 892 F.2d 1128, 1132 (2d Cir.1989).

### B. Disability Discrimination Claims

Defendant asserts that plaintiff's ADA claim must be dismissed because plaintiff did not timely file a complaint with the EEOC, notwithstanding plaintiff's recent efforts to create a factual dispute

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
**(Cite as: 2002 WL 770732 (D.Conn.))**

Page 3

surrounding the date of his termination. According to defendant, because plaintiff previously submitted sworn statements that he was terminated on July 23, 2000, the EEOC charge had to be filed within 300 days, or by May 19, 2001. As the EEOC charge was not filed until June 15, 2001, defendant's argument goes, it is necessarily untimely.

The parties agree that under the ADA, plaintiff was required to file a charge with the EEOC within 300 days of the date of the alleged discriminatory action. *See* 42 U.S.C. § 12117(a) (incorporating Title VII procedures for ADA claims); 42 U.S.C. § 2000e-5(e)(1). This requirement functions as a statute of limitations, in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in a district court. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982); *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir.1996).

In *Delaware State College v. Ricks,* 449 U.S. 250, 256-58 (1980), the Supreme Court held that the period for filing an EEOC charge begins on the day an employee receives notice of an adverse employment action rather than on the effective date of the action. Following *Ricks,* the Second Circuit has held that the operative date for determining the beginning of the 300-day period is when plaintiff had notice of the discriminatory termination, rather than the actual date of discharge. *Miller v. International Tel. & Tel. Corp.,* 755 F.2d 20, 23 (2d Cir.1985); *Smith v. United Parcel Svc. of Am., Inc.,* 65 F.3d 266, 268 (2d Cir.1995); *Economu v. Borg-Warner Corp.,* 829 F.2d 311, 315 (2d Cir.1987).

**\*4** As defendant notes, plaintiff's original complaint initiating this lawsuit alleged that he was terminated on July 23, 2000, and plaintiff previously swore in his EEOC charge and in the claim submitted to the Department of Labor that he was terminated on July 23, 2000. Plaintiff, however, argues that the use of July 23, 2000 in the first complaint was a typographical error, and that August 23, 2000 is the accurate date of termination. Plaintiff makes no effort to explain the inconsistency between his affidavit and his two sworn statements, but instead points to evidence that the store manager does not recall the actual date of plaintiff's termination and that a request for leave of absence was submitted on July 27, 2000 as creating a material issue of fact in dispute as to the

timing of his termination. Plaintiff now claims in an affidavit submitted in opposition to summary judgment that he did not consider himself terminated until August 23, 2000, when, following defendant's continued refusal to schedule him for work, he deemed himself constructively discharged and filed for unemployment. *See* Doc. # 22, ¶¶ 14-15.

This claim of constructive discharge as of August 23, 2000 conflicts with the other statements made by plaintiff, which consistently asserted that July 23, 2000 was the date at which plaintiff was informed that defendant would not schedule him for work and terminated him. "[I]n opposing summary judgment, a party who has testified to a given fact in his deposition cannot create a triable issue merely by submitting his affidavit denying the fact." *Palazzo ex rel Delmage v. Corio,* 232 F.3d 38, 43 (2d Cir.2000) (*citing Perma Research & Development Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969)). To rule otherwise would "greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma Research,* 410 F.2d at 578; *see also Hayes v. New York City Department of Corrections,* 84 F.3d 614, 619 (2d Cir.1996) ("factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial") (*quoting Perma Research,* 410 F.2d at 578). In light of the rule that a party cannot create a factual dispute simply by contradicting his own previous testimony, it seems inconsequential that the inconsistent statements were made in sworn statements to two state agencies, rather than in a deposition. *Cf. Margo v. Weiss,* 213 F.3d 55, 61 (2d Cir.2000) ("There is no reason to distinguish, for purposes of the *Perma Research* principle, between an attempt to conjure up a triable issue of fact through the proffer of a late affidavit and an attempt to achieve the same end through the submission of delayed errata sheets or supplemental answers to interrogatories. None will defeat a motion for summary judgment.").

In any event, even if plaintiff's contradictory affidavit could create a factual dispute as to when plaintiff was actually terminated, the 300-day period "starts running on the date when the employee receives a definite notice of the termination, not upon his discharge." *Miller v. International Tel. & Tel. Corp.,* 755 F.2d 20, 23 (2d Cir.1985). On the record here, the Court finds that it

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
**(Cite as: 2002 WL 770732 (D.Conn.))**

is undisputed that following the July 24, 2000
meeting with Gursen plaintiff was aware that
defendant was refusing to let him return to work
until he was cleared of all restrictions, and that
defendant intended to terminate him. The letter sent
by plaintiff's counsel on July 28, 2000 confirms that
this was the substance of the meeting, as do the two
sworn statements submitted by plaintiff to the
Department of Labor and the EEOC. Thus,
notwithstanding the inaccuracy of July 23, 2000 as
the claimed date of termination, as the meeting
between plaintiff and Gursen occurred July 24,
2000, there is simply nothing in the record
suggesting that plaintiff was not, as he claimed in
his EEOC and Department of Labor statements,
informed by Gursen that he could not return to work
on July 24, 2000. Indeed, plaintiff's affidavit
submitted in opposition to summary judgment
confirms that Gursen advised him at that meeting
that he would not schedule plaintiff for work until
he could work with no restrictions. *See* Doc. # 22, ¶
12. Thus, regardless of when plaintiff now claims
to have considered himself "constructively
discharged," it is undisputed that he had notice that
defendant refused to permit him to return to work
and was terminating him as a result after meeting
with Gursen on July 24, 2000, and his filing with
the EEOC in June 2001 was therefore untimely.
[FN2]

> FN2. With respect to the state
> discrimination claim, plaintiff was required
> to file a charge of discrimination with the
> Connecticut Commission on Human Rights
> within 180 days of the alleged
> discriminatory actions. *See* Conn. Gen
> Stat. § 46a-82(e). As it is undisputed that
> plaintiff did not file a charge with the
> CHRO within 180 days of either July 23,
> 2000 or August 23, 2000, this claim is also
> dismissed.

III. Conclusion

**\*5** For the foregoing reasons, defendant's motion
for judgment [# 15] is GRANTED as to the ADA
and state discrimination counts.

IT IS SO ORDERED.

2002 WL 770732 (D.Conn.)

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

END OF DOCUMENT